A. A. Smith *v.* B. W. Bartholomew, John N. Willson, Allen Bates and John Averill.

## [In Chancery.]

*Mortgage. Equity of Redemption. Decree. Assignment. Parties.*

There must be a perfected decree in order to foreclose a mortgagor's equity of redemption. The right to redeem is not forfeited where a mortgagee or his assignee brings a petition to foreclose and finally goes into possession under the supposition by both parties that the decree is perfected according to the terms agreed upon between ·them, it not being contemplated or provided in the agreement that any rights should be lost or acquired under a decree; and the grantee of the mortgagee would be charged with notice of the right to redeem, the mortgagor having done nothing to mislead as to the title.

Where A assigned certain notes secured by mortgage to B as security for a claim of B against A, and when said claim should „be paid then said notes to be passed to C as security for a claim of C against A, and in case of a compromise of the mortgage debt, to give A seasonable notice so he could redeem if he chose, and C having the notes at the time of the assignment passed them over to B and took a receipt therefor in which B agreed to return them to C upon payment of B's claim, as security for C's claim, it was *held* that C's claim was in the nature of a subsequent mortgage and he was entitled in equity to notice of any proposed sale or disposition of the notes or property on which they were secured, for less than the whole amount of the mortgage debt, so that he could pay B's claim and take the notes if he desired; and C would have to be made a party to a foreclosure suit by B in order to be affected by a decree. ·

By the contract of assignment A's rights would be subordinate to those of C, and C's rights could not be defeated by the consent of A to any act of B not authorized by the terms of the contract, or not consistent with the lien of C.

B having brought a petition to foreclose but having failed to perfect his decree, the mortgagor's right of redemption is unaffected by the fact that he has bargained to sell his right to C, who has an interest under said assignment independent of this suit, and it being agreed between the mortgagor and C that the equity of redemption is to continue in the former until the conditions on which he stipulates to convey to C have been performed by him.

A motion that C should enter as co-orator in a bill against B to redeem, or the cause be dismissed for want of parties, which was not filed until the case was ready for hearing on bill, answer, traverse and testimony, although the facts upon which B relied to make C a proper party were known to B before he filed his answer and he did not insist in his answer that he should be made a party, *held* properly overruled.

It is well settled that where the court can make a decree at the hearing, which will do entire justice to all the parties, and not prejudice their rights, notwithstanding the non-joinder or mis-joinder of a party, and the objection, though known before, is not insisted on by plea, demurrer, or answer, nor raised until the cause is ready for hearing upon bill, answer, traverse and proof, it will not then allow the objection to prevail.

In this case C being a witness for the orator and being the orator's solicitor, and the nature and extent of his interest being disclosed by the testimony and considered by the court, he will be bound by the decree,

Smith *v.* Bartholomew et al.

BILL IN CHANCERY. The orator alleged his ownership of the land in question on the 2d day of April, 1853, located in Barre ; that on said 2d day of April the orator and one John A. Smith gave to. one George W. Harrington a note for the sum of $300, payable as follows : $100 on the first day of April, 1854 ; $100 the first day of April, 1855 ; and the balance the first day of April, 1856, with interest annually, and secured the same by mortgage on said premises ; that on the 2d day of April, 1855, he was justly indebted to one Hiram Ellis, in the sum of $300, specified in a promissory note of that date, which note the orator then and there secured by mortgage on the premises aforesaid ; and on the same 2d day of April, 1855, the orator gave to one John A. Smith seven promissory notes of $100 each, payable one each year for seven years, on the 2d day of April in each year, all of which notes were on interest annually—all of which notes the orator then and there secured by mortgage on the premises aforesaid ; that he made some payments on the several notes, so that in the year 1858 the amount due on the several mortgages was not over $1200 to $1400 ; that in the year 1858 all the said notes and mortgages went into the hands of B. W. Bartholomew and Denison K. Smith ; that in the year 1858, the said Smith and Bartholemew, by virtue of said notes and mortgages, entered into possession of said premises, and have ever since, themselves, and those claiming under them, had and kept the exclusive possession of the premises, taking all the rents and profits to themselves ; that the said premises were a valuable farm of about sixty-four acres ; that the use of the premises, or the rents and profits thereof, have been of the value of $150 per year, and more than sufficient to pay the annual interest on the notes aforesaid ; that the said D. K. Smith has since deceased, and that said Bartholomew is his administrator ; that John N. Willson, Allen Bates, and John Averill, of Barre, in the county of Washington, claim some interest in said premises under said Smith and Bartholomew, and are aiding and assisting in keeping the orator out of the same ; that the orator has frequently asked for an account of the rents and profits, that the amount may be deducted from the amount due on said notes, and the orator permitted to redeem the premises ; and praying that

the court might refer the case to a master to ascertain the amount due on said notes and mortgages, the amount of payment thereon, and the amount of rents and profits since the defendants took possession, and, after deducting the same, that the orator may be permitted to redeem by paying the balance due, and for general relief.

The defendant (Bartholomew) answered, alleging among other things that on the 24th day of February, 1858, while he and said D. K. Smith, as administrators of David Holbrook's estate, held said four one hundred dollar notes, and while Hiram Ellis held all the other notes specified in the bill, and before said Ellis was under guardianship, this defendant and said Dennison K., as such administrator, brought their bill in chancery against the orator, A. A. Smith, and Hiram Ellis, to foreclose said mortgages; that said bill was duly served and entered in court at the March term, 1858, Washington county; the defendants appeared by their solicitors, Randall and Heaton & Reed; that it was then agreed by the parties that their respective solicitors, D. K. Smith and F. V. Randall, should agree on the terms of a decree to be made in the case and entered on the docket, which they did, and said A. A. Smith has ever since recognized and assented to the same; that the terms agreed upon were that said A. A. Smith should pay a certain sum on or before the 20th day of June, 1858, and the balance in annual instalments as are usual in such cases; and that in case he should fail to pay the sum agreed on by the 20th day of June, 1858, then he and all persons claiming under him should be foreclosed and forever barred from the equity of redemption in the premises, which was agreed and assented to by A. A. Smith; that this defendant thinks J. A. Wing, Esq., the orator's solicitor in this case, drew said bill for foreclosure; that said Smith never intended to redeem; that said Denison K. Smith informed said Wing at said term of court of said agreement and employed him to draw up a decree agreeably to said terms, and have it signed and recorded and entry made, etc., in the proper form; that this defendant afterwards purchased of Alvin Smith, guardian of Hiram Ellis, the five notes held by Ellis and all his interest in said premises; that September 8, 1858, this defendant and said D. K.

Smith, both believing that said Wing had drawn up said decree and had the same signed and recorded as agreed upon, thus giving them good title to the premises, as said A. A. Smith had wholly failed to make the payment as agreed, sold and conveyed said premises as the administrators of said Holbrook's estate ; and showing regular conveyances to the defendants in this suit ; that prior to selling said premises this defendant and Denison K. Smith had had exclusive possession and control of the same from said June 20th, 1858, as was agreed on as aforesaid, and they and those claiming under them have ever had the quiet and peaceable possession thereof up to about the time this suit was commenced in September, 1866, when the said Wing informed them that there was no record of a decree, etc. ; that after the said Wing had had the said notes in his possession for about eight years for the purpose of drawing a decree, about March, 1866, he commenced an action at law on the said notes against the said A. A. Smith, and secured the same by attaching the property of the said Smith on the writ in said case in which the said Wing was plaintiff ; that the said Wing then made the said Smith believe he could collect the said notes of him, and so got him to agree to quit-claim to the said Wing all his right and interest in the said premises in consideration that he, Wing, would save him from the payment of any and all of the said notes, he to use the said Smith's name in an action to redeem the said premises, which the said Smith agreed to ; that the said Wing, with a fraudulent intent to cheat this defendant and others out of their just rights, designedly neglected to draw the said decree and perfect the title to the said premises as aforesaid, and with the same intent purchased the said A. A. Smith's interest in the same, if he had any interest therein ; that the said D. K. Smith deceased March 6, 1860, and this defendant was appointed his administrator.

The other defendants severally answered, adopting the answer of the defendant Bartholomew, and setting forth their purchase and possession of portions of the said premises and their reliance upon the covenants in their deeds.

The answers were traversed and testimony taken and filed, and then, March 6th, 1867, the defendants filed a motion, claiming

that the testimony showed that the said Smith has sold out all his interest, if he had any, in the said premises to the said Wing, and the said Wing has from the beginning been prosecuting the said suit for his own personal and individual benefit alone, and praying that he be ordered to enter as co-orator with the said A. A. Smith in this suit, and upon his neglect so to do, that the said suit be dismissed for want of parties.

At the March term, 1867, Washington county, PECK, chancellor, overruled the motion on the same ground given in the opinion of the court, and ordered that the orator have a decree against the defendants to redeem the premises in respect to the several mortgages mentioned in the bill, and the case was referred to a master to take an account of the sum due on each of said mortages, and of the rents and profits of the premises, while the defendants or any of them or their assigns have been in possession, and apply the rents and profits on the mortgage debt, and report the balance due, if any, which ever way it might be.

There was another aspect of the decretal order not material to be stated. An accounting was taken by a master and report filed, and hearing on the report at the March term, 1869, Washington county. The chancellor ordered that the orator have a decree allowing him to redeem as against these defendants, on payment of the sum found due by the chancellor on the report of the master, from which the defendants appealed.

The $408.64 item, referred to near the close of the opinion, was the balance on the notes secured by the third mortgage above the amount due on the award referred to in the opinion. The material portion of the evidence and the facts established by the evidence are stated in the opinion.

*Timothy P. Redfield*, for the defendants.

*J. A. Wing*, for the orator.

The opinion of the court was delivered by

WILSON, J. This is a bill to redeem, and the first question is, whether the orator entered into any agreement with Bartholomew

and Smith in regard to their foreclosure against him, by which he should be estopped from claiming title to the premises, or the right to redeem them.

I.   It is claimed by the defendants that Bartholomew and Smith agreed with the orator that he might continue in possession of the premises until June 20th, 1858, and they would take a decree for the title and possession in full payment of all the mortgage notes, and it is said by the defendants that upon the faith of this alleged agreement Bartholomew and Smith took possession of the farm and conveyed it, and that their grantees now claim title to the same.

As tending to prove that such agreement was entered into between the orator, Bartholomew and Smith, the defendants rely principally upon the testimony of the orator and Mr. Randall.   It appears from the testimony of the orator that in the petition for foreclosure against him in favor of Bartholomew and Smith, F. V. Randall, Esq., acted as counsel for the orator; that he then expected the petitioners would obtain a decree at that term; that he instructed his counsel, Mr. Randall, to get as long time as he could within which he might redeem the premises, but at that time he did not intend to redeem.   It further appears from his testimony that during that term of the court, or soon after, he was informed by his counsel, Randall, that the first payment on the decree must be made in June, 1858; that if Bartholomew and Smith should take the farm on the decree, they would take it in full payment of all the mortgages; that he heard nothing more about it until he was sued by Wing in March, 1866, on a portion of the mortgage notes, and did not know until that time that no decree had been perfected.

Mr. Randall testifies that he was counsel for A. A. Smith in the petition against him in favor of Bartholomew and Smith, in which D. K. Smith acted as counsel for Bartholomew and Smith; that he was authorized to make the best terms he could with D. K. Smith as to the time of redemption; that it was agreed between D. K. Smith and the witness, they acting as counsel for the parties in that petition, that said A. A. Smith should have three months within which to pay a portion or all the amount then due; that

there was talk between the witness and D. K. Smith that if said Bartholomew and Smith should take the farm on the decree they would take it in full satisfaction of the mortgage notes, that he so wrote to the orator, but that he cannot say that the agreement embraced any thing except the time of redemption, and that the decree was not to contain any provision that the notes were not to be further prosecuted.   The testimony of Mr. Randall leaves no doubt that D. K. Smith was of opinion at the time of making the agreement as to the time of redemption that the premises, if not redeemed, could be sold for enough to satisfy all the mortgage notes; that he made such statements to Randall favoring such result; that Randall, acting on the assumption that the premises were ample security, and if taken on the decree would satisfy the mortgage notes, so informed the orator. The orator had no personal knowledge of the terms of the agreement between his counsel and D. K. Smith.   He relied on information given him by Mr. Randall.   It is undoubtedly true that the orator then believed that if Bartholomew and Smith should obtain the farm on the decree it would satisfy the mortgage notes, and acting upon the belief that they had perfected their decree in the case, that the time of redemption had expired and having no knowledge to the contrary, he allowed them to take possession of the premises.   But it is quite clear from the testimony that the alleged agreement related only to the time of redemption, and that no agreement was made by which the rights or liabilities of the parties in respect to the notes, the proposed decree, or the premises, were to be different from what they would be if the time of redemption had been fixed by the court without any agreement of the parties; and that no agreement was made by which Bartholomew and Smith were to have any title to or possession of the premises except what they should obtain by a perfected decree after the time of redemption had expired.   There is no evidence in the case tending to show agreement or understanding that Bartholomew and Smith were to take the premises in satisfaction of the mortgage notes, but their acts show the contrary.   Bartholomew, prior to the sale of the farm, gave notice to J. Allen Smith, who was interested in the third mortgage, that enough could not be realized from the sale of the farm, available on the third mort-

gage, to pay the award and expenses. Now if there had been any agreement by which Bartholomew and Smith were to be treated as purchasers of the farm of the orator, by paying the incumbrances on it, they would have paid the third mortgage debt in full as well as the debts secured by the first and second mortgages. But their refusal to pay but a small part of the third mortgage debt under pretence that the avails of the farm were insufficient to pay the whole, shows they did not take possession of the farm under any agreement with the orator. It is established by the evidence that Bartholomew and Smith claimed title to the farm and took possession and disposed of it under what they supposed, at the time, was a perfected decree of foreclosure. But in fact no decree had been or was ever perfected and the orator's equity of redemption in the premises has not been foreclosed. It is said by the defendants that the orator was cognizant of and consented to the sale of the farm by Bartholomew and Smith, but we find no act or consent of the orator to any proceedings of Bartholomew and Smith in relation to the sale of the farm, inconsistent with his claim to redeem the premises. His silence and implied consent to the sale are fully accounted for in the fact that he supposed they had perfected their decree, and that they were acting under title derived from a decree which had foreclosed his right to redeem the premises. It was in consequence of the neglect or fault of Bartholomew and Smith and their solicitors that no decree was perfected. The orator did not, nor did his counsel in that proceeding, practice any fraud or in any manner deceive or mislead the defendants in respect to their title to or interests in the premises. Bartholomew and Smith, the latter being the principal solicitor for the petitioners in that proceeding, knew or might have known on examination of the records that no decree had been perfected and that the orator's right to redeem was not foreclosed. The purchasers of the premises from Bartholomew and Smith were and are affected with notice of the orator's equity, and it is not postponed or lost by any act on his part.

II. It is claimed by the defendants that Mr. Wing, solicitor for the orator in this case, was employed by Bartholomew and Smith in that case, that he agreed to draw and perfect the decree, that

he claimed a residuary or contingent interest in the notes assigned by J. A Smith to Bartholomew and Smith, which were embraced in that proceeding ; that in order to protect that interest it is claimed by the defendants that Wing fraudulently neglected to draw and perfect the decree, and that this suit is brought for the benefit of Wing, and upon these grounds the defendants claim that both the orator and Wing should be estopped from redeeming the premises. It is conceded by Wing that he told D. K. Smith that he would draw and perfect a decree when he should receive the necessary papers to enable him to draw it. He says the papers necessary to draw and perfect a decree in the case were not furnished, and for that reason no decree was perfected by him. There is considerable testimony in the case tending to show that Wing has admitted since this controversy commenced that he agreed to draw the decree, but the same testimony tends to show that he claimed his failure to perfect the decree was because he was not furnished with the necessary papers in the case. The testimony leaves it in doubt both as to the time his obligation to act as attorney in that case commenced and as to the extent of his duty in that behalf. We think it is not proved that Mr. Wing without good cause neglected to perfect a decree in that case. Whether he should have informed Bartholomew and Smith at an earlier day that he had not perfected a decree, it is not necessary to decide, for it will be observed that Wing was not counsel for this orator in that case, and the right of the orator to redeem can not be affected by any act committed or omitted by Wing as attorney for the petitioners in that case. But as Wing claims to have a lien upon the premises, created by the assignment made by J. Allen Smith to Bartholomew and Smith, as evidenced by exhibit "I," and has, in order to protect that lien, bargained with the orator for the right to redeem the premises, some notice of the respective rights of the parties under J. Allen Smith's assignment of the four notes becomes necessary in order to determine whose wrong or fault has rendered necessary this bill to redeem. It appears that J. Allen Smith, on the 23d day of February, 1858, assigned to said Bartholomew and D. K. Smith four notes against the orator, secured by the third mortgage on the premises in suit,

for them to hold until they should be paid in full the sum of $257.67 mentioned in a certain award of arbitrators referred to in said assignment, together with the interest on the same and reasonable charges, and then the notes were to be security for the fees and charges of said Wing which he then had against J. Allen Smith, and the balance, after the liens of said Bartholomew and Smith and said Wing were satisfied, was to be paid to J. Allen Smith. The contract, by which these liens were created, contains a clause in the following words, viz: "they are to use due diligence to convert the property, on which said notes are secured, into money, or to foreclose the mortgage if necessary, or to do any act that may be necessary in the premises, and if necessary to compromise the claim to the best advantage of all concerned, they giving me reasonable notice of the same, if any compromise is made so if I choose I can redeem the same." On the same day or soon after the making of that assignment, Bartholomew and Smith executed and delivered to said Wing their receipt for said notes, of which the following is a copy :

"Barre, February 23, 1858.
"Received of J. A. Smith four notes signed by Austin Smith, dated April 2, 1855, for $100 each, payable in 1858, 1859, 1860 and 1861, with interest annually, as security for an award of arbitrators made January 8, 1858, for $257.67 with interest, and when that sum and reasonable costs and charges are paid then they are to pass to J. A. Wing as his security for his costs and charges, the said Wing having an account against said Smith, and after said Wing is paid, the balance to go to said J. A. Smith agreeably to the assignment made to us by said J. A. Smith."

The written assignment by J. Allen Smith of the notes, and the receipt of Bartholomew and Smith for the notes, are to be considered and construed as parts of the same contract. Bartholomew and Smith acquired the first lien upon the notes and security, and they had the right to pursue any proper remedy, consistent with the rights of Wing and J. Allen Smith, to enforce collection, at least to the extent of their lien. The contract did not require notice to J. Allen Smith, unless it was proposed by Bartholomew and Smith, or by Wing, to compromise and surrender the notes for less than their nominal value. It is obvious, we think, that, con-

struing the contract, by which these liens were created, according to evident equity, it was the duty of Bartholomew and Smith to give notice to Wing of any sale or disposition they proposed to make of the notes or property on which they were secured, if they proposed to dispose of the same for less than the whole amount of the mortgage debts. By such notice to Wing they would have given him an opportunity to pay their prior lien, and upon such payment the notes would have passed into the hands of Wing, as provided by the contract. It could not have been the intention of the parties to give Bartholomew and Smith the right, either with or without the consent of J. Allen Smith, to so manage the notes and dispose of the property as to defeat the lien of Wing, unless that result should become necessary, and be produced by the use of legitimate means, to obtain satisfaction of their own prior lien, on due notice to Wing. The position assumed by the defense is that the lien of Wing was and is entirely within the control of J. Allen Smith, Bartholomew and Smith, to preserve or defeat it at pleasure, but we think the language of the contract will warrant no such construction. By the terms of their agreement, the rights of J. Allen Smith are subordinate to those of Wing, whose rights could not be defeated by the consent of Smith to any act of Bartholomew and Smith not authorized by the terms of the contract, or not consistent with the lien of Wing. Bartholomew and Smith, and J. Allen Smith, having stipulated that Wing should have the second lien on the notes, must have understood that he was to be consulted as to any disposition proposed to be made of the notes or property, before they could dispose of them or the premises for less than the amount due, and that notice to J. Allen Smith alone would not protect them against the rights of Wing. But it appears that Bartholomow and Smith sold the farm for $1,325, and then sold the notes taken for the purchase money at great discount, all which they did without the knowledge or consent of Wing, and he did not assent to it. It appears that Bartholomew and Smith paid the amount due on the prior mortgages. They represented to the estate, of which they were administrators, that there was not enough of the avails of the farm, after paying the prior incumbrances, to pay the award into about

$75. Wing made inquiry of Bartholomew, from time to time, whether there was anything of the avails of the farm in his hands to apply on Wing's claim, and was told by Bartholomew that the avails of the farm were insufficient to satisfy prior liens. The attention of the defendant, Bartholomew, was called to this subject in April, 1863, and also at several other times between that time and the bringing of this suit, and he at all times denied that the avails of the farm were sufficient to pay prior incumbrances, and denied that there was anything in his hands belonging to Wing. He not only did this, but also stated to Wing and J. Allen Smith, that the value of the farm was very much less than the mortgages upon it. If a decree of foreclosure had been perfected, and the equity of redemption foreclosed, and the farm was not sufficient in value to pay all the mortgage notes, and was not sold for a sum sufficient for that purpose, Wing might properly proceed against the orator, and recover of him according to his lien, at least to the extent of his proportion of the difference between the amount of the whole mortgage notes and the value of the farm, and Bartholomew could interpose no legal objection to such recovery. Neither the lien of Wing on the notes, nor his right to proceed against the orator, is lost in consequence of no decree having been perfected, nor can his lien, or his right to proceed against the orator, be prejudiced by the management or mismanagement of Bartholomew, under the circumstances of the case. It seems that Wing, acting upon the aforesaid statements of Bartholomew, proceeded against the personal property of the orator, and secured, by attachment, a portion of the notes on which he (Wing) had a lien, under the contract of February 23d, 1858. The orator, on examination of the files and records of the court, learned that no decree was ever perfected, that his equity of redemption in the premises had not been foreclosed, but the mortgage security had been unlawfully disposed of, and the orator was called on to make payment of a portion of the third mortgage notes. Under these circumstances, it would seem that the orator felt compelled to redeem, or suffer the defendants to keep the farm at the sum Bartholomew represented he had realized out of it, and the orator himself to pay the third mort-

gage, or contest the right of the holders of those notes to collect them. It appears, from the account taken by the master, there was in the hands of Bartholomew, after paying all prior incumbrances, the sum of $154.50, as, of September 8, 1858, which, upon that hypothesis, belonged to Wing. And it would seem, if that sum had been paid over to Wing, it would have done very much to prevent this litigation. But the position assumed by Bartholomew is, first, that he is not accountable to Wing for money which, by the terms of the agreement of February 23d, 1858, belonged to Wing ; and, secondly, that neither the orator nor Wing is entitled to redeem the premises. These being the grounds of defense, we are agreed that the orator should not be required to assent to the proceedings of Bartholomew, but he has a right to redeem, and the right of redeeming the premises is not affected by the fact that the orator has bargained to sell the right of redemption to Wing, who has an interest in the premises independent of his contract in relation to this suit. By the assignment to Bartholomew and Smith of the four third mortgage notes, they obtained the whole mortgage security applicable to that mortgage to secure their prior lien upon the notes. Wing's security, under the assignment, for his claim on the notes, was in the nature of a subsequent mortgage, the same in effect as between Bartholomew and Smith, on the one hand, and Wing on the other, as if their respective liens had been secured by separate mortgages. This being so, Wing had, by the terms of the assignment, a right to redeem the property from that mortgage by paying the debt secured to Bartholomew and Smith, as provided in the assignment. But Bartholomew and Smith proceeded under the assignment, without any regard whatever to the rights or interests of Wing. In their petition for foreclosure they proceeded against the orator and Ellis. They did not make Wing a party defendant, in order to foreclose his interest as subsequent mortgagee or assignee of a portion of the third mortgage notes and security. Therefore, Wing's interest, created by that assignment, has not been foreclosed, and it would not have been foreclosed even if Bartholomew and Smith had pefected their decree in that petition, and had foreclosed the orator's redemption in the premises. Upon the facts in

Smith v. Bartholomew et al.

this case, and in view of the respective equities of the parties, under that assignment, it would be absurd to hold that any neglect of Wing to perfect a decree in the petition of Bartholomew and Smith against the orator, should estop Wing from asserting his right under the assignment, when his right under the assignment to redeem the premises would not have been foreclosed if the decree in that case had been perfected.

III. It is insisted by the defendants that Wing should have been made a party orator, by reason of the written agreement (exhibit D) between the orator and Wing, by which it appears that Wing has an interest in the equity of redemption. The writing between the orator and Wing constitutes an agreement that the orator will convey to Wing his right to redeem the premises when Wing shall have indemnified the orator against all the notes secured by the mortgages on the premises. It is an agreement, on the part of the orator, to sell to Wing the premises, on payment by him of a sum equal to the whole amount of the incumbrances thereon. But by the terms of the contract between them, the equity of redemption is to continue in the orator until the conditions on which he stipulated to convey have been performed by Wing, and this was the situation of the equity of redemption at the time of the hearing. This being so, the orator is a proper party to redeem. It is true that Wing is interested, and seeks to redeem the premises, but the defendant's motion that Wing be made a party orator was not filed till after the answers, traverse and testimony were filed, notwithstanding it appeared that the facts on which the defendants relied to make Wing a proper party were known to them before they filed their answer and they did not insist in their answer that he should be made a party. We think the motion was properly overruled. It is well settled that where the court can make a decree at the hearing, which will do entire justice to all the parties, and not prejudice their rights, notwithstanding the nonjoinder or misjoinder of a party, and the objection, though known before, is not insisted upon by plea, demurrer or answer, nor raised until the cause is ready for hearing upon bill, answer, traverse and proof, it will not then allow the objection to prevail. In this case Wing

42

was a witness for the orator ; he was and is the orator's solicitor, prosecuting this bill of complaint; the nature and extent of his interest has been disclosed by the testimony, and considered by the court, and he will be bound by the decree.

The account was correctly taken with reference to the sum the orator should pay to redeem, as against these defendants. The defendants have no claim on that portion of the notes which goes to make up the sum of $408.64, and that sum was properly deducted.

We are of opinion that the orator is entitled to the relief prayed for in his bill of complaint.

The decree of the chancellor is affirmed, and the cause is remanded to the court of chancery, there to be disposed of as indicated by said decree.